# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>HAROLD GASHE,<br><br>    Defendant. | No. CR07-4033-LTS<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

This matter is before me on a motion for compassionate release (Doc. 135) filed by defendant Harold Gashe, along with his motion to appoint counsel (Doc. 136).

## I.  BACKGROUND

On March 4, 2008, Gashe pleaded guilty to four counts: Count 1, conspiracy to distribute 50 grams or more of methamphetamine; Count 2, possession of a firearm in furtherance of a drug trafficking crime pursuant to 18 U.S.C. § 924(c); Count 3, possession of a firearm in furtherance of a drug trafficking crime pursuant to 18 U.S.C. § 924(c); and Count 4, being a domestic abuser in possession of a firearm pursuant to 18 U.S.C. § 922(g).  Docs. 86, 91.  On May 27, 2008, United States District Judge Mark W. Bennett sentenced Gashe to 570 months' imprisonment, followed by eight years of supervised release.  Doc. 98.  That sentence consisted of 210 months on Count 1 and 120 months on Count 4 to be served concurrently, 60 months on Count 2 to be served consecutively and 300 months on Count 3 to be served consecutively.  Judge Bennett subsequently lowered Gashe's sentence to 528 months' after reducing his sentence on Count 1 to 168 months pursuant to 18 U.S.C. § 3582(c)(2) and retroactive USSG Amendment 782.  Doc. 116.

Gashe subsequently filed a motion (Doc. 131) arguing his sentence should be reduced pursuant to 18 U.S.C. § 3582(c)(2) and retroactive USSG Amendment 599. I denied that motion both because Amendment 599 took effect prior to Gashe's sentencing and because he was properly sentenced under Amendment 599. Doc. 132. Gashe also filed a motion (Doc. 128) arguing his sentence should be reduced pursuant to § 404 of the First Step Act (FSA). I denied that motion because § 404 of the FSA lowered the sentencing ranges only for certain crack cocaine offenses, while Gashe was convicted of a methamphetamine offense. Doc. 134.

Gashe, who is 54 years old, now requests compassionate relief because he believes his sentence is unreasonable. Specifically, he argues that a similarly situated defendant sentenced pursuant to the FSA would receive a much shorter term of incarceration for the same conduct. Gashe also argues that his rehabilitation while in prison weighs in favor of granting him compassionate release. According to the online Bureau of Prisons (BOP) inmate locator, Gashe is currently at Forrest City Medium FCI, in Forrest City, Arkansas, and his projected release date is January 6, 2045.

## II.   COMPASSIONATE RELEASE

The term "compassionate release" refers to 18 U.S.C. § 3582(c)(1)(A), which allows a defendant to directly petition a district court for a sentence reduction "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." If a defendant fully exhausts administrative remedies, the court may reduce the defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the court finds that "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i); *see also United States v. Rodd*, 966 F.3d 740, 748 (8th Cir. 2020). In his pro se filing, Gashe alleges he submitted his request for compassionate release to his facilities' warden and that the warden did not respond to it

2

Case 5:07-cr-04033-LTS-KEM   Document 137   Filed 10/26/20   Page 2 of 9

within 30 days. Thus, I will assume he has exhausted his administrative remedies.

As noted above, Gashe's argument is that his sentence would be shorter if he were sentenced for the first time today because of changes wrought by the FSA. Specifically, he argues he would not be subject to the stacked 360 months of incarceration he received on Counts 2 and 3 if he were sentenced today, and that this disparity is an extraordinary and compelling reason to grant compassionate release. Gashe is correct that:

> The FSA effected a number of changes in several areas, including federal sentencing law. For one, the Act eliminated the so-called "stacking" provision of 18 U.S.C. § 924(c)(1)(C), under which a defendant convicted of multiple § 924(c) charges at the same time was subject to higher mandatory minimum penalties for each subsequent count, even if he had no prior § 924(c) convictions. Instead of automatically triggering a 25-year sentence for a second, but concurrently imposed § 924(c) conviction, the FSA requires the existence of a prior § 924(c) conviction "that has become final," before "stacking" can occur. 18 U.S.C. § 924(c)(1)(C)(I); *United States v. Jackson*, Crim. No. 99-15, 2019 WL 6245759, at \*5 (S.D.W. Va. Nov. 21, 2019).

*United States v. Marks*, 455 F. Supp. 3d 17, 20 (W.D.N.Y. 2020). For the purpose of considering Gashe's argument, I will assume he would have received a shorter sentence if he had been sentenced after the FSA was passed.

Some district courts have found that sentencing disparities created by the FSA constitute extraordinary and compelling circumstances warranting compassionate release. *See Marks*, 455 F. Supp. 3d at 36 (stating that because Congress subsequently mitigated the harsh stacking effect of § 924(c), a defendant whose charges were previously stacked was subject to an unfair and excessive sentence); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at \*2 (D. Kan. Feb. 21, 2020) (the FSA's amendment to 18 U.S.C § 924(c) by no longer requiring § 924(c) convictions to be "stacked" constitutes extraordinary and compelling reasons for defendants who have stacked § 924(c) convictions); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 806121, at \*7 (D. Utah Feb. 18, 2020) (same); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at \*4 (D. Neb. Nov. 14, 2019) (same).

3

Case 5:07-cr-04033-LTS-KEM   Document 137   Filed 10/26/20   Page 3 of 9

Other courts disagree. *See United States v. Neubert*, No. 1:07-cr-00166-SEB-KPF, 2020 WL 1285624, at *3 (S.D. Ind. Mar. 17, 2020) ("Regardless, a reduction under § 3582(c)(1)(A) is not warranted because the disparity between Mr. Neubert's actual sentence and the one he would receive if he committed his crimes today is not an 'extraordinary and compelling circumstance.' Instead, it is what the plain language of § 403 [of the FSA] requires."); *United States v. Valdez*, No. 3:98-cr-0133-01-HRH, 2019 WL 7373023, at *3 (D. Alaska Dec. 31, 2019) ("Unfortunate as defendant's circumstances may be, the fact is that law does evolve and there is nothing extraordinary about it."); *Fox*, 2019 WL 3046086, at *4 ("Despite Fox's understandable frustration over the unfairness he perceives in others getting sentencing benefits while he does not, the compassionate release provision is not an end-run around the Commission's authority to make certain Guideline changes not retroactive or Congress' decision to reduce sentences for some crimes but not others, or a means to redress perceived disparities with other sentenced defendants.").

I have previously found that other nonretroactive FSA changes do not constitute extraordinary and compelling circumstances. *See United States v. Pratt*, CR05-4017-LTS, Doc. 144 at 9 (N.D. Iowa July 6, 2020) (discussing the divergent case law but holding that the fact that defendant's sentence would be lower if he were sentenced for the first time today does not alone or in combination with subsequent rehabilitation constitute extraordinary and compelling circumstances). For several reasons, I conclude that the changes the FSA made to § 924(c), either alone or in combination with Gashe's rehabilitation, do not constitute an extraordinary and compelling reason justifying compassionate release.

First, in enacting the FSA, Congress was cognizant of the difference between making statutory changes retroactive or prospective. Congress chose to make some changes retroactive. *See United States v. Ellis*, No. CR18-1002-LTS, Doc. 416 at 1 (N.D. Iowa Apr. 8, 2020) (§ 404 is the only part of the FSA that allows a court to retroactively lower previously imposed sentences and is only relevant for defendants who

4

committed crack cocaine offenses before August 3, 2010). Other portions applied only prospectively. *See United States v. Hodge*, 948 F.3d 160, 163 (3d Cir. 2020) (Stating, in the context of FSA § 403, "[i]n the First Step Act, Congress spoke unequivocally: the reduced § 924(c) mandatory minimum would apply retroactively 'to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of [that] date.'"). Had Congress intended the entire FSA to apply retroactively, or had Congress intended FSA changes to constitute extraordinary and compelling reasons under the compassionate release statute, it could have said so.

Second, finding that the FSA's changes are extraordinary and compelling would make virtually every defendant sentenced before the FSA became law eligible for a reduced sentence. This would render the word "extraordinary" meaningless. Compassionate release would no longer be based on the individual characteristics of each defendant seeking compassionate release. Instead, it would be a categorical reduction. While Congress clearly intended the FSA's amendments to the compassionate release statute to increase its usage, there is no indication Congress intended compassionate release to operate as broadly as Gashe requests.

Third, finding an extraordinary and compelling reason in this situation is too far removed from USSG § 1B1.13. As I have previously stated, I agree with those courts that have found that although that section provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the FSA's changes.[1] *See*

---

[1] The Eighth Circuit Court of Appeals has declined to expressly overrule the current version of § 1B1.13. But it has indicated that district courts should consider extraordinary and compelling reasons outside the strict confines of § 1B1.13. In a case where the district court denied a defendant's compassionate release motion, the defendant argued the district court erred by relying on the § 1B1.13 policy statements. In declining to consider that issue, the Eighth Circuit noted that district court was clearly aware of the change of the law:

> While some courts adhere to "the pre-First Step Act policy statements," "[o]ther courts [have] ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as 'extraordinary and compelling reasons.'" *Id*.

5

*United States v. Gotschall*, No. CR-17-4031-LTS, Doc. No. 337 at 4–5 (N.D. Iowa Dec. 27, 2019); *see also United States v. Rodriguez*, 424 F. Supp. 3d 674, 682 (N.D. Cal. 2019) (Congress knew that the BOP rarely granted compassionate release requests prior to the FSA, and the purpose of the FSA is to increase the number of compassionate release requests granted by allowing defendants to file motions in district courts directly even after the BOP denies their request); *United States v. Brown*, 411 F. Supp. 3d 446,

---

> (citing *United States v. Brown*, 411 F. Supp. 3d 446, 448–51 (S.D. Iowa Oct. 8, 2019)). . .
>
> After analyzing whether Rodd satisfied the "extraordinary and compelling reasons" criteria set forth in § 1B1.13, the district court assumed that Rodd satisfied a more expansive definition of the phrase and analyzed the compassionate-release motion under 18 U.S.C. § 3553(a). Specifically, the court stated, "Even assuming Congress intended to expand the use of compassionate release with the First Step Act, the Section 3553(a) factors present at sentencing have not changed. Rodd does not qualify for compassionate release." *Id*.

*United States v. Rodd*, No. 19-3498, 2020 WL 4006427, at *4–5 (8th Cir. July 16, 2020). The Eighth Circuit went on to find that:

> We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13. The district court knew its discretion. It expressly stated that "[e]ven assuming Congress intended to expand the use of compassionate release with the First Step Act, the Section 3553(a) factors present at sentencing have not changed" and, as a result, "Rodd does not qualify for compassionate release." *Rodd*, 2019 WL 5623973, at *4; *see also id.* ("[E]ven assuming a more expansive definition of 'extraordinary and compelling reasons' under the First Step Act, Rodd's Motion is denied."). In other words, the district court assumed that Rodd's health and family concerns constituted extraordinary and compelling reasons for compassionate release. Therefore, we need only determine "whether the district court abused its discretion in determining that the § 3553(a) factors weigh against granting [Rodd's] immediate release."

*Rodd*, 2020 WL 4006427, at *6. In a footnote, the Eighth Circuit also observed that, "'[a]s the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future.' *United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019)." *Id*. at *5 n.7.

451 (S.D. Iowa 2019), *order amended on reconsideration*, 457 F. Supp. 3d 691 (S.D. Iowa 2020)(same).

While I am not bound by § 1B1.13 in deciding whether extraordinary and compelling reasons exist, it is a helpful starting point. Nothing in that section suggests that non-retroactive changes to sentencing law constitute extraordinary and compelling reasons. Rather, the Guideline instructs that extraordinary and compelling reasons are those based on medical conditions, age or family circumstances. § 1B1.13 cmt. n.1. Adding classes of potential extraordinarily and compelling reasons wholly divorced from those types of personal circumstances is more than the amended compassionate release statute permits.

This position has been at least tacitly supported by the Eighth Circuit. In a recent case in which a defendant argued extraordinary and compelling reasons based on FSA's change to § 924(c)'s stacking provisions, the Eighth Circuit affirmed the district court's denial of the motion, stating:

> Loggins complains that the district court did not expressly consider the combination of his rehabilitative efforts and the change in penalties under § 924(c). Although the court rejected a freestanding argument for relief under the First Step Act based on the change in § 924(c) penalties, and did not refer again to § 924(c) in its discussion of compassionate release, we are not convinced that the court ignored that circumstance in reaching its ultimate conclusion. Where the court expressly considered post-sentencing rehabilitation (a circumstance not listed in § 1B1.13), the more natural inference is that the court did not feel constrained by the circumstances enumerated in the policy statement, but simply found that a non-retroactive change in law did not support a finding of extraordinary or compelling reasons for release.

*United States v. Loggins*, 966 F.3d 891, 893 (8th Cir. 2020). Like the district court whose decision was affirmed in *Loggins*, I find that a change in law that is not expressly

made retroactive does not constitute an extraordinary and compelling reason justifying compassionate release.[2]

Because Gashe has not stated any other reason for compassionate release that I find to be extraordinary and compelling, I find his rehabilitation is not extraordinary and compelling. *See* 28 U.S.C. § 994(t), stating "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Accordingly, even if Gashe is a rehabilitated and model prisoner, that circumstance alone cannot be an extraordinary and compelling reason that would justify compassionate release.[3]

Because Gashe has failed to allege and extraordinary and compelling reasons that would justify compassionate release, I need not move on to the next step and consider the 18 U.S.C. § 3553(a) factors. His motion must be denied.

### III. CONCLUSION

For the reasons set forth herein:

1. Defendant's motion for compassionate release (Doc. 135) is **denied**.

---

[2] To avoid any confusion, I understand that I have discretion to determine what is, and what is not, an extraordinary and compelling circumstance. I find that this one is not.

[3] This is not to say that changes to sentencing law are never relevant in the context of compassionate release. To be eligible for compassionate release, defendants must show three things: 1) that they have exhausted their administrative remedies, 2) that they have extraordinary and compelling reasons that justify release and 3) release would not be inconsistent with the 18 U.S.C. § 3553(a) factors. While I find that nonretroactive changes to sentencing law are not extraordinary and compelling reasons, I have found that they may be considered in evaluating whether the § 3553(a) factors support compassionate release. *See United States v. Conner*, No. CR07-4095-LTS, 2020 WL 3053368, at *10 n.17 (N.D. Iowa June 8, 2020); *United States v. Smith*, No. CR07-3038-LTS, 2020 WL 2844222, at *13 (N.D. Iowa June 1, 2020). Similarly, while rehabilitation *alone* is not an extraordinary and compelling reason, it can be extraordinary in combination with other extraordinary reasons, and it is obviously relevant if the § 3553(a) factors are considered. *See Pepper v. United States*, 562 U.S. 476, 500 (2011) ("As we explained above, evidence of postsentencing rehabilitation may be highly relevant to several of the sentencing factors that Congress has specifically instructed district courts to consider.").

2. Defendant's motion to appoint counsel (Doc. 136) is **denied** as moot.

**IT IS SO ORDERED.**

**DATED** this 26th day of October, 2020.

_____
Leonard T. Strand, Chief Judge